UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY * | | CASE NO. 14-0196 |
|    **Plaintiff** * | | |
| VERSUS * | | JUDGE |
| PD NATIONAL, INC; PAUL DAVIS RESTORATION, INC; KEVIN CRAWFORD; DANIEL DRUML; JOHN K. MURPHY; HOWDY RUSSELL; GREG CARTWRIGHT; CHRISTOPHER KARPELLS; AND JACINTA BELL, WIFE OF/AND DAVID BELL, individually and on behalf of their minor children, MIA BELL and DAVID JACOB BELL * | | MAGISTRATE |
|    **Defendants** * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, The Cincinnati Insurance Company ("Cincinnati"), brings this action for declaratory relief under 28 U.S.C. § 2201 against defendants, PD National, Inc., Paul Davis Restoration, Inc., Kevin Crawford, Daniel Druml, John K. Murphy, Howdy Russell, Greg Cartwright, and Christopher Karpells (collectively, the "Bell Defendants"), and Jacinta Bell, wife of/and David Bell, individually and on behalf of their minor children, Mia Bell and David Jacob Bell, (collectively, the "Bell Plaintiffs"). Cincinnati requests that this Court declare the rights, liabilities, and other legal relationships under a contract of insurance, and determine rights arising under that contract. Specifically, Cincinnati seeks declaratory relief related to insurance coverage and claims for damages and/or indemnification from Cincinnati for claims asserted by the Bell Plaintiffs against the Bell Defendants related to substantial restoration work following a

house fire in the underlying lawsuit captioned *Jacinta Bell, et al v. The Hanover American Ins. Co., et al*, currently pending on the docket of the Civil District Court for the Parish of Orleans, No. 2010-01955, "C" (hereinafter the "Bell Lawsuit").  In support of its request, Cincinnati respectfully represents as follows:

### Parties

**1.**

Plaintiff, Cincinnati, is a foreign corporation organized and existing under the laws of a state other than Louisiana, with its principal office in Cincinnati, Ohio, and which is authorized to do business in Louisiana as an admitted insurer by the Louisiana Department of Insurance.

**2.**

Defendant, PD National, Inc., is a corporation organized and existing under the laws of the state of Wisconsin, where the Cincinnati Policy was issued.  PD National, Inc. is a franchisee corporation of Defendant, Paul Davis Restoration, Inc., which is a corporation organized and existing under the laws of the state of Florida, doing business nationwide.  PD National, Inc. is a franchisee over certain territory in southeast Louisiana, with a main office located in the Parish of Jefferson, located in this District and subject to the jurisdiction of this Court.

**3.**

Defendants, Kevin Crawford, Daniel Druml, John K. Murphy, Howdy Russell, Greg Cartwright, and Christopher Karpells, are each individuals domiciled in the State of Louisiana, Parish of Jefferson and/or Parish of St. Tammany, located in this District and subject to the jurisdiction of this Court.

**4.**

Defendants, Jacinta Bell, wife of/and David Bell, individually and on behalf of their minor children, Mia Bell and David Jacob Bell, are each individuals domiciled in the State of Louisiana, Parish of Orleans, located in this District and subject to the jurisdiction of this Court.

**5.**

Defendants, PD National, Inc., Paul Davis Restoration, Inc., Kevin Crawford, Daniel Druml, John K. Murphy, Howdy Russell, Greg Cartwright, Christopher Karpells, and Jacinta Bell, wife of/and David Bell, individually and on behalf of their minor children, Mia Bell and David Jacob Bell, are each entities or individuals that have an interest in this matter and who would be affected by this declaratory judgment.

**Jurisdiction and Venue**

**6.**

This Court has jurisdiction under 28 U.S.C. § 1332 because this dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

**7.**

Venue lies in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Cincinnati's claim occurred within this district.

**Cincinnati Insurance Policy**

**8.**

As relevant here, Cincinnati issued a Commercial General Liability policy of insurance, number CPP 091 80 22 (the "Cincinnati Policy"), to PD National, Inc. with effective dates of December 23, 2004 through December 23, 2009.  Cincinnati also issued a Commercial Umbrella Liability policy of insurance to PD National, Inc., attached to and forming part of the Cincinnati Policy.   A copy of the Cincinnati Policy is attached hereto as "Exhibit 1."

**9.**

On March 31, 2011, Cincinnati informed the Bell Defendants that it accepted the defense of the Bell Defendants in the Bell Lawsuit under a full reservation of rights to deny coverage and withdraw from the defense pursuant to the terms and conditions of the Cincinnati Policy and the allegations made by the Bell Plaintiffs.  Cincinnati has provided the Bell Defendants with legal counsel in the Bell Lawsuit.  A copy of the Second Supplemental and Amending Petition filed by the Bell Plaintiffs, which contains all allegations made by the Bell Plaintiffs against the Bell Defendants, is attached hereto as Exhibit "2".

**10.**

The Cincinnati Policy provides that Cincinnati's defense and indemnity obligations extend only to lawsuits seeking damages covered under the policy.  Specifically, the Cincinnati Policy states in Section I(A)(1)(a):

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured

against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

**11.**

The Cincinnati Policy defines "property damage" in Section V(20) as either physical injury to property or the loss of use of property:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**12.**

In Section I(A)(1)(b), the Cincinnati Policy limits coverage for "property damage" to damage that is "caused by an 'occurrence'" and which "occurs during the policy period."

**13.**

The Cincinnati Policy defines "occurrence" in Section V(16) as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**14.**

The Cincinnati Policy contains several exclusions which limit coverage for damages alleged in the Bell Lawsuit.

**15.**

The Cincinnati Policy contains an exclusion for property damage that is the result of intentional acts of the insured in Section I(A)(2):

**Exclusions**

This insurance does not apply to:

    **a.**    **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**16.**

The Cincinnati Policy contains an exclusion for property damage that results from work performed by the insured in Section I(A)(2):

**Exclusions**

This insurance does not apply to:

    **j.**    **Damage to Property**

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*    \*    \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

**17.**

The Cincinnati Policy also contains an exclusion for property damage to product of the insured in Section I(A)(2):

**Exclusions**

This insurance does not apply to:

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**18.**

The Cincinnati Policy also contains an exclusion for property damage to work performed by the insured in Section I(A)(2):

**Exclusions**

This insurance does not apply to:

**l.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**19.**

The Cincinnati Policy also contains an exclusion for damage to impaired property in Section I(A)(2):

> **Exclusions**
>
> This insurance does not apply to:
>
>     **m.    Damage to Impaired Property or Property Not Physically Injured**
>
>         "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
>         (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
>         (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
>         This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**20.**

The Cincinnati Policy defines "impaired property," "products completed operations hazard," "your work," and "your product" in Section V – DEFINITIONS:

> 11.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
>     a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
>     b.    You have failed to fulfill the terms of a contract or agreement;
>
> If such property can be restored to use by:

        a.      The repair, replacement, adjustment or removal of "your product" or "your work"; or

        b.      Your fulfilling the terms of the contract or agreement.

19.    a.      "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

           (1)    Products that are still in your physical possession; or

           (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

                (a) When all of the work called for in your contract has been completed; or

                (b) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

                (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

           Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

25.    "Your product":

        a.      Means:

           (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

                (a)    You;

                (b)    Others trading under your name; or

        (c)    A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b.    Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

26.    "Your work"

  a.    means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b.    includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    (2) The providing of or failure to provide warnings or instructions.

**The Bell Lawsuit**

**21.**

In the Bell Lawsuit, the Bell Plaintiffs seek damages from the Bell Defendants related to property damage at their residence located at 5430 Bullard Avenue, New Orleans, Louisiana, due to deficiencies in remediation work performed by the Bell Defendants following a fire which occurred on February 26, 2009.  (Exhibit "2" – Second Supplemental and Amending Petition)

**22.**

The Bell Plaintiffs allege that certain of the Bell Defendants came to their residence following the fire to perform mitigation, but failed to arrange for electricity to be restored, causing the Bell Plaintiffs to be unable to set their home alarm and leading to the theft of personal property from the home on February 27, 2009.  (Exhibit "2", ¶¶ 19-20)

**23.**

The Bell Plaintiffs allege that personal property was removed from their residence by certain of the Bell Defendants to a warehouse for storage during the restoration work, and that some of this personal property was never returned.  (Exhibit "2", ¶¶ 22, 45)  The Bell Plaintiffs further allege that the remainder of this personal property was not cleaned by the Bell Defendants as was contracted for.  (Exhibit "2", ¶ 46)

**24.**

The Bell Plaintiffs entered into an remediation agreement with certain of the Bell Defendants to repair damages caused by the house fire, and later executed an agreement to expand the scope of work to include an addition to the third floor of the house by adding a media room and fitness center.  (Exhibit "2", ¶¶ 29, 34)

**25.**

The Bell Plaintiffs allege that certain of the Bell Defendants began the remediation and construction work at their residence without obtaining plans prepared by an architect or engineer, causing the City of New Orleans to issue a stop work order.  (Exhibit "2", ¶ 48)

**26.**

The Bell Plaintiffs allege that certain of the Bell Defendants deficiently framed the residence, causing over stressing in the foundation and leading to findings by multiple engineers that the residence was not structurally sound and in need of complete demolishment and rebuilding due to poor workmanship.  (Exhibit "2", ¶¶ 52, 54, 56, 57)

**27.**

The Bell Plaintiffs allege that the Bell Defendants collectively breached their agreements with them by failing to repair, design, and construct the residence as agreed, leading to consequential damages for which the Bell Plaintiffs seek monetary damages.  (Exhibit "2", ¶¶ 65 – 68)

**28.**

The Bell Plaintiffs allege that the Bell Defendants collectively failed to repair, design, and construct the residence in a workmanlike or timely manner, leading to consequential damages for which the Bell Plaintiffs seek monetary damages.  (Exhibit "2", ¶¶ 69 – 71)

**29.**

The Bell Plaintiffs allege that the Bell Defendants collectively used unfair trade practices in their dealings with them in violation of La. R.S. 51:1405, including misrepresenting the amount of work performed, demanding payment for work not performed, misrepresenting that

they had obtained proper plans to perform the work, misapplying payments by failing to pay subcontractors, instructing their engineer to provide false evidence, misrepresenting the location and condition of personal property, and misrepresenting that they had cleaned such personal property, for which the Bell Plaintiffs seek monetary damages and attorney fees.  (Exhibit "2", ¶¶ 72 – 73)

**30.**

The Bell Plaintiffs allege that the Bell Defendants committed fraud on them by the misrepresentations and material omissions, leading to consequential damages for which the Bell Plaintiffs seek monetary damages and attorney fees.  (Exhibit "2", ¶¶ 74 – 76)

**31.**

The Bell Plaintiffs allege that the Bell Defendants took personal property from them for which the Bell Defendants cannot account, leading to loss of use and possession, for which the Bell Plaintiffs seek monetary damages.  (Exhibit "2", ¶¶ 77 – 79)

**32.**

The Bell Plaintiffs seek monetary damages against the Bell Defendants under theories including breach of contract, unworkmanlike performance, loss of contents, violations of the Louisiana Unfair Trade Practices Act, and fraud.

## Prayer for Declaratory Judgment

**33.**

Cincinnati seeks a declaration from this Court that no coverage exists for the claims asserted by the Bell Plaintiffs under the Cincinnati Policy.  Cincinnati specifically pleads each and every term, condition, and warranty contained in the Cincinnati Policy, and incorporates the provisions of that policy herein, as if copied *in extenso*, as a defense to coverage for the claims of the Bell Plaintiffs described above.  Cincinnati cites the terms, exclusions, and definitions of the Cincinnati Policy in support of its request for a ruling from this Court that there is no coverage under the Cincinnati Policy for the claims of the Bell Plaintiffs.  These provisions apply to the claims of the Bell Plaintiffs as they are presently known and understood.  Cincinnati reserves the right to supplement, amend, identify, and/or rely on any other provision(s) of the Cincinnati Policy as grounds supporting its denial of coverage.

**34.**

The Bell Plaintiffs do not seek monetary damages against the Bell Defendants for "property damage" that was caused by an "occurrence" and so no coverage exists under the Cincinnati Policy.

**35.**

No claims arising from remediation and/or construction work performed by the Bell Defendants at the Bell residence are covered damages under the Cincinnati Policy, as all such claims arise out of work performed by the insured and so are excluded from coverage under the terms of the policy, including the "Your Work," "Your Product," "Impaired Property," and "Property Damage" exclusions cited above.

**WHEREFORE**, Plaintiff, The Cincinnati Insurance Company, prays that Defendants, PD National, Inc., Paul Davis Restoration, Inc., Kevin Crawford, Daniel Druml, John K. Murphy, Howdy Russell, Greg Cartwright, Christopher Karpells, and Jacinta Bell, wife of/and David Bell, individually and on behalf of their minor children, Mia Bell and David Jacob Bell, be cited and served, and that after all legal delays and proceedings, this Court declare that:

1. There is no coverage for damages under the Cincinnati Policy for the claims asserted by the Bell Plaintiffs against the Bell Defendants in the Bell Lawsuit and no further duty to defend the Bell Defendants in the Bell Lawsuit.

The Cincinnati Insurance Company further prays for any other general or equitable relief to which the Court determines it is entitled.

Respectfully submitted,

*/s/ Kyle P. Kirsch*_____
MICHAEL R. SISTRUNK, T.A. (#12111)
KYLE P. KIRSCH (#26363)
KEVIN P. KRESS (#31490)
McCRANIE, SISTRUNK, ANZELMO, HARDY,
    McDANIEL & WELCH, LLC
909 Poydras Street, Ste. 1000
New Orleans, LA 70112
Telephone: (504) 831-0946
Facsimile:  (800) 977-8810
ATTORNEYS FOR THE CINCINNATI
INSURANCE COMPANY